UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL DOUCET | CIVIL ACTION |
| V. | NO. 25-405 |
| ABBOTT LABORATORIES, INC., ET AL. | SECTION "L"(2) |

**ORDER & REASONS**

There are presently two motions before the Court. The first is a Motion for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendant Abbott Laboratories, Inc. ("Abbott"). R. Doc. 11. The second is a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Abbott and St. Jude Medical, LLC ("St. Jude"). R. Doc. 9. Plaintiff Michael Doucet opposes the motions. R. Docs. 32, 33. Defendants Abbott and St. Jude replied. R. Docs. 34, 35. Oral argument was held on Monday, May 19, 2025. Considering the record, the briefing, the arguments, and the applicable law, the Court now rules as follows.

**I.     BACKGROUND**

This is a product liability suit concerning the implantation of an allegedly defective medical device approved by the Food and Drug Administration (the "FDA"). R. Doc. 1-1. On March 27, 2020, Plaintiff Michael Doucet fell some twenty-five feet down an elevator shaft. R. Doc. 1-2 at 2. Thereafter, Mr. Doucet underwent multiple surgeries and extensive medical treatment to mend a bone fracture in his right ankle. *Id.* at 2-4. After these procedures, Mr. Doucet nevertheless continued to experience chronic pain in his lower back and extremities. *Id.* at 4. Mr. Doucet's doctor thus recommended him for a study involving a medical device allegedly manufactured by Defendant Abbott that is designed to manage chronic, intractable pain in the lower body. *Id.* at 5.

1

This device, called a Proclaim Dorsal Root Ganglion Stimulator ("DRG Stimulator"), is surgically implanted in the patient and stimulates a bundle of "DRG" nerves located on the outside of the spinal cord to alleviate pain. *Id.* The DRG Stimulator "system" includes an implantable pulse generator or "IPG," implantable leads that connect to the IPG, an external charger, and an external programmer. R. Doc. 9-1 at 12. The IPG and implantable leads work together to send electrical pulses toward the DRG nerves, which can block or alter pain signals before they reach the brain. *Id.*

On October 18, 2022, Mr. Doucet had a DRG Stimulator inserted without complications. R. Doc. 1-2 at 5-6. Over the next year, he reported to his doctor that the DRG Stimulator was effective, and his pain had subsided significantly. *Id.* at 6-7. However, on October 27, 2023, Mr. Doucet began to complain that he had "some irritation" at his DRG procedure site. *Id.* at 7. As such, the doctor informed Mr. Doucet that he would have Abbott reach out to him to discuss the issues he had been having with the device. *Id.* at 8. In the meantime, Mr. Doucet alleges the DRG Stimulator would malfunction, "feeling like it was turning off and on sporadically causing continuing extreme discomfort and irritation." *Id.* On January 16, 2024, Abbott advised Mr. Doucet that the DRG Stimulator had been recalled. *Id.* Mr. Doucet subsequently informed his doctor that he would like the device to be removed as soon as possible. *Id.* However, as of this date, it is the Court's understanding that the device has yet to be removed because Mr. Doucet claims that he cannot afford to have it medically extracted. *Id.*

On January 13, 2025, Mr. Doucet filed the present lawsuit in state court against Abbott. *Id.* He alleges four causes of action under the Louisiana Products Liability Act, including: (1) construction or composition defect; (2) design defect; (3) inadequate warning; and (4) breach of express warranty. *Id.* at 8-13. He also brings three Louisiana state law claims for: (1) breach of

implied warrant of merchantability and fitness; (2) redhibition; and (3) breach of warranty of fitness for ordinary use. *Id.* at 13-15. He requests damages for various injuries, such as past and future physical pain and suffering; past and future medical expenses; loss of enjoyment of life, etc. *Id.* at 15-16. In response, Abbott removed the case to this Court based on diversity jurisdiction. R. Doc. 1. On May 9, 2025, Mr. Doucet amended his petition and added Defendant St. Jude who joins in Abbott's Motion to Dismiss for Failure to State a Claim. R. Docs. 11; 30.

## II.  PRESENT MOTION

Upon removal of the case to this Court, Abbott filed the present Motion to Dismiss for Lack of Personal Jurisdiction, and argues that it is subject to neither specific nor general jurisdiction in Louisiana. R. Doc. 11-1. Additionally, Abbott and St. Jude jointly move to dismiss Mr. Doucet's case pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds of federal preemption under the Medical Devices Amendment to the Food, Drug, and Cosmetics Act; failure to state a claim; and prescription. R. Doc. 9-1. Mr. Doucet generally opposes Abbott and St. Jude's motions, highlighting Abbott's complex corporate structure and the necessity for discovery in order to properly state a claim. R. Docs. 32, 33. Abbott and St. Jude replied, largely reiterating the arguments made in their initial motion. R. Docs. 34, 35.

## III.  LAW & ANALYSIS

The Court begins its analysis by first addressing Abbott's 12(b)(2) motion and then proceeds to the merits of Abbott and St. Jude's arguments on their 12(b)(6) motion.

### A. Abbott's Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. Indeed, personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to

3

an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks omitted). "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Jobe v. ATR Mktg., Inc.,* 87 F.3d 751, 753 (5th Cir. 1996). A plaintiff satisfies this burden by "presenting a prima facie case for personal jurisdiction." *Colwell Realty Invs., Inc. v. Triple T Inns of Az., Inc.,* 785 F.2d 1330, 1333 (5th Cir. 1986). To be clear, "[p]roof by a preponderance of the evidence is not required" at this stage in the proceedings. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). In assessing whether the plaintiff has made a prima facie showing of personal jurisdiction, the allegations made in the complaint "must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985). The court may thus consider affidavits, depositions, and other documentation outside of the plaintiff's complaint when determining whether personal jurisdiction exists. *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir. 1982).

Within the context of diversity cases such as the one at present, a federal district court's ability to exercise personal jurisdiction over a defendant residing outside of the state in which it sits involves a two-part test. *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012). First, the court must assess whether a forum state's long arm statue permits service of process. *Id.* Second, the court must determine whether the assertion of personal jurisdiction over the Defendant violates due process. *Id.* Here, Louisiana's long-arm statute, La. R.S. § 13:3201(B), extends jurisdiction to the constitutional limit, providing that a court "may exercise personal jurisdiction over a nonresident on any basis consistent with . . . the Constitution of the United States." As such, the

"two inquiries fold into one," and a separate analysis of the Louisiana long-arm statute and due process is unnecessary. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Rather, the sole question before the court is whether the defendant has meaningful "contacts, ties, or relations" with Louisiana, such that exercise of jurisdiction against it would not offend constitutional due process. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945).

Personal jurisdiction may be general or specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* In this case, Mr. Doucet alleges that this Court has both general and specific jurisdiction over Abbott. Conversely, Abbott maintains that it is not subject to personal jurisdiction in Louisiana whatsoever, and that due process mandates dismissal of Mr. Doucet's claims against it. As explained below, the Court ultimately need not reach the issue of general jurisdiction because it finds that Mr. Doucet has successfully made a prima facie showing of specific jurisdiction.

### a. Mr. Doucet Has Made a Prima Facie Showing of Specific Personal Jurisdiction.

When addressing specific jurisdiction, federal district courts apply a three-part test to determine:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

5

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Upon plaintiff establishing the first two requirements, the burden then shifts to the defendant to demonstrate that an exercise of personal jurisdiction would be unfair or unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Particularly relevant to the present motion, the second requirement for specific jurisdiction focuses on the "affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Indeed, due process requires a connection between the defendant's in-state activities and a plaintiff's claims; specific jurisdiction may only be exercised over a non-resident defendant where the defendant's actions within the forum state concern the plaintiff's causes of action. *Id.* at 930 n.6. "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Id.* In other words, the suit itself must arise out of or relate to the defendant's contacts with the forum. *See Britsol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 272 (2017).

Here, Mr. Doucet alleges in his petition that Abbott is subject to specific jurisdiction in this forum because the company developed, manufactured, and placed its products, including the DRG Stimulator, into a stream of commerce that included distribution in Louisiana. Such an allegation invokes the Supreme Court's "stream of commerce theory," which has been expressly endorsed by the Fifth Circuit and stands for the proposition that "[w]here a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Luv N' care*, 438 F.3d at 470; *see also Oswalt v. Scripto, Inc.,* 616 F.2d 191, 199-200 (5th Cir. 1980) (finding jurisdiction where defendant had "attempted in [no] way to limit the states in which the [products] could be sold" but instead "had

6

every reason to believe its product would be sold to a nation-wide market, that is, in any or all states"). However, Abbott takes the position that Mr. Doucet's claims do not arise out of the company's contacts with Louisiana, arguing that it was not the entity responsible for or involved at all in the manufacturing of the DRG Stimulator. In support, Abbott submits the Declaration of Timothy Lorinser, the company's Director of Tax, which states that St. Jude designed and manufactured the DRG Stimulator, not Abbott. R. Doc. 1-1. Mr. Doucet, on the other hand, maintains that Abbott indeed manufactured the DRG Stimulator or at least had some role in its distribution. Furthermore, he attaches his own exhibits that indicate a representative from Abbott personally reached out to him prior to his implantation procedure, the packaging he received containing the DRG Stimulator was emblazoned with the word "Abbott," and the loan device agreement that he was made to sign stated Abbott would be party to the contract. R. Docs. 32-1; 32-2; 32-3; 32-4; 32-6.

Upon review of the record and the evidence submitted by the parties, the Court is satisfied that Mr. Doucet has made a prima facie showing of specific jurisdiction. As an initial matter, Mr. Doucet has furnished the Court with several materials that he received in connection with his DRG Stimulator procedure that bear the name "Abbott" and its corresponding corporate logo, rather than anything to do with St. Jude. Moreover, the premarket approval letter for the DRG Stimulator submitted by Abbott itself indicates that an "Abbott Medical" was the applicant-manufacturer who submitted the DRG Stimulator for FDA approval; any mention of St. Jude is notably absent. R. Doc. 10-3. The Court finds that this documentation seriously undermines Abbott's representations of its minimal to non-existent involvement with the device at the manufacturing and production levels and thus weighs in favor of jurisdiction.

Furthermore, the Court observes that, on its face, there may be some merit to the declaration made by Abbott's Tax Director supposedly clarifying that St. Jude is the manufacturer of the DRG Stimulator. This declaration, however, does not explain why all the product labeling that Mr. Doucet received indicates Abbott as the company associated with the device—a fact that this Court must construe in favor of jurisdiction at this stage in the proceedings. *D.J. Invs.*, 754 F.2d at 546 (explaining a conflict in the facts is resolved in plaintiff's favor when there is a prima facie burden for personal jurisdiction). Indeed, Abbott has crucially failed to submit any further proof to substantiate the conclusion that it did not in fact manufacture the device at issue. Rather, it essentially asks this Court to reach a pre-discovery finding that Abbott is not the entity responsible and thus not subject to jurisdiction on the basis of its employee's word alone. The Court refuses to entertain such a request. A bare-bones assertion—even one made by a purportedly knowledgeable employee—that is not supported by facts is insufficient to support a motion to dismiss on jurisdiction grounds at this stage in the proceedings. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (noting "ultimate or conclusory facts and conclusions of law" are insufficient to support or defeat even a motion for summary judgment).

Based on the foregoing, the Court finds that it is premature to conclude at this time that Abbott had nothing to do with the manufacturing or distribution of the DRG Stimulator in this matter. There are simply too many lingering questions as to Abbott's level of involvement with the device that have yet to be answered in light of its participation throughout the FDA approval process and the prior representations it made to Mr. Doucet. Furthermore, as noted by the parties at oral argument, Abbott's corporate structure appears to be factually complex; thus, its relationship with St. Jude warrants at least some discovery before Mr. Doucet's claims are to be dismissed on jurisdictional grounds. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841,

855 (5th Cir. 2000) (finding discovery designed to support an alter ego theory of personal jurisdiction is warranted if there are issues of fact that need to be explored). Accordingly, the Court will construe the factual allegations made in Mr. Doucet's petition in his favor and concludes he has made a prima facie showing that Abbott is subject to specific jurisdiction in Louisiana. The Court does wish to clarify, however, that this finding today does not preclude Abbott from re-challenging the exercise of personal jurisdiction at a later date and in accordance with the proper procedure, either following discovery or at trial. *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1271 n.12 (5th Cir. 1983) ("Eventually, of course, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."). But at this time, Mr. Doucet has made the required prima facie showing of personal jurisdiction.

### B. Abbott and St. Jude's Motion to Dismiss for Failure to State a Claim

The Court now moves on to address Abbott and St. Jude's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion raises arguments based on, *inter alia*, federal preemption and prescription. The Court takes each in turn.

#### a. Preemption Under § 360k(a) of the Medical Device Amendments

The first issue raised in Abbott and St. Jude's motion is federal preemption. More precisely, Abbott and St. Jude argue that § 360k(a) of the Medical Device Amendments prohibits state law causes of action that impose requirements "different from, or in addition to" requirements already imposed by the FDA vis-à-vis a regulatory mechanism known as premarket approval. On this basis, Abbott and St. Jude contend that § 360k(a) expressly preempts Mr. Doucet's claims under the Louisiana Products Liability Act and Louisiana redhibition law because they are not premised

9

upon the FDA's regulations already in place with respect to the DRG Stimulator, but rather an entirely different standard of care established by Louisiana law. Before diving into the complexities of how preemption applies in the context of state law claims involving medical devices approved by the FDA, the Court will start the analysis by providing a background of the relevant statutory and regulatory framework.

In 1976, Congress passed the Medical Devices Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA"), which established a regulatory regime to approve and monitor the manufacture and sale of medical devices. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). The MDA sets forth three levels of "oversight for medical devices, depending on the risks they present." *Id.* Class I devices are "subject to the lowest level of oversight" such as "labeling requirements." *Id.* (citing 21 U.S.C. § 360c(a)(1)(A)). Class II devices are subject to all of the Class I requirements and additional "'special controls such as performance standards and postmarket surveillance measures." *Id.* at 316-17 (quoting 21 U.S.C. § 360c(a)(1)(B)). Class III devices are subject to the "most federal oversight." *Id.* These devices either support or sustain human life, substantially prevent impairment of human health, or present a potentially unreasonable risk of injury or illness. *Id.* (citing 21 U.S.C. § 360c(a)(1)(C)(ii)).

The Food and Drug Administration ("FDA") subjects all new Class III devices to premarket approval ("PMA"), at which time the "manufacturer must provide the FDA with a 'reasonable assurance' that the device is both safe and effective." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996) (quoting 21 U.S.C. § 360e(d)(2)). "Premarket approval is a 'rigorous process,'" and the FDA spends "an average of 1,200 hours reviewing each application." *Riegel,* 552 U.S. at 317-18 (quoting *Lohr*, 518 U.S. at 477). Ultimately, to gain premarket approval, the manufacturer must demonstrate that the device satisfies the statutory standard—a "reasonable assurance of

10

safety and effectiveness." See 21 U.S.C. §§ 360c(a)(1)(C), 360e(c). To meet this burden, the manufacturer:

> must submit a detailed PMA application that contains full reports of all investigations of the safety and effectiveness of the device; a full statement of the components, ingredients, properties, and principles of operation of the device; a full description of the methods used in the manufacture and processing of the device; information about performance standards of the device; samples of the device; specimens of the proposed labeling for the device; and any other relevant information.

*Riegel v. Medtronic, Inc.*, 451 F. 3d 104, 109 (2d Cir. 2006), *aff'd*, 552 U.S. 312 (2008) (citing 21 U.S.C. § 360e(c)). In analyzing PMA applications, the FDA balances "any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." *Riegel*, 552 U.S. at 318 (citation omitted). If the agency is not satisfied with the information the manufacturer provided, it can demand more information. 21 U.S.C. § 360e(c)(1)(G). The agency can also require a manufacturer to revise the device's design, manufacturing methods, or labeling to obtain approval. 21 C.F.R. § 814.44(e). Under the "reasonable assurance of safety and effectiveness" standard, the agency may "approve devices that present great risks if they nonetheless offer great benefits in light of available alternatives." *Riegel*, 552 U.S. at 318.

Particularly relevant to the present motion, 21 U.S.C. § 360k(a) of the MDA contains an express preemption clause, providing that no State may establish "any requirement . . . which is different from, or in addition to" a federal requirement "which relates to the safety or effectiveness of [a medical device subject to the MDA]." The United States Supreme Court has twice now interpreted § 360k(a). *See Lohr*, 518 U.S. at 477; *Riegel,* 552 U.S. at 317-18. In fact, the Court in *Riegel v. Medtronic, Inc.* created a helpful two-part test to determine whether preemption applies to a plaintiff's state law claims against a certain medical device. First, the court must determine whether the federal government has "established requirements applicable to [the medical

11

device]." *Id.* at 372. The Fifth Circuit has held that Class III devices subject to PMA "automatically" satisfy the first prong. *Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012). Second, the court evaluates whether the state law claims are based on "requirements with respect to the device that are 'different from, or in addition to,' the federal ones, and that relate to safety and effectiveness." *Riegel*, 552 U.S. at 321-22 (quoting § 360k(a)). If they are, the state law claim is preempted. *See id.*

However, courts have concluded that so-called "parallel" state law claims are *not* preempted by § 360k(a). *Id.* at 330. A state law claim is "parallel" if it "provid[es] a damages remedy . . . premised on a violation of FDA regulations." *Id.* Put more simply, plaintiffs may use the LPLA or any other state law as a legal mechanism to seek recovery for violations of FDA regulations that rendered the device at issue "unreasonably dangerous" and ultimately caused them harm. *See Reddick v. Medtronic, Inc.*, No. 21-30169, 2022 WL 715494, at *3 (5th Cir. Mar. 9, 2022); *Scianneaux v. St. Jude Medical S.C., Inc.*, 961 F.Supp.2d 808, 812 (E.D. La. 2013); *Parra v. Coloplast Corp.*, No. CV 16-14696, 2017 WL 24794, at *3 (E.D. La. Jan. 3, 2017).

Even if a state law claim is sufficiently parallel in that it alleges liability based on a defendant's failure to comply with FDA-imposed requirements, a district court may still dismiss it if the claim is "impermissibly conclusory and vague." *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011). A complaint is insufficient to state a "parallel" products liability claim where it does not "specify the manufacturing defect," "specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury," or "tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process." *Id.* at 782. Similarly, in *Naquin v. Medtronic, Inc.*, the Fifth Circuit affirmed the district court's dismissal of claims for design defect, construction defect,

12

failure to warn, and breach of express warranty due to inadequate pleading. No. 20-30793, 2021 WL 4848838, at *3 (5th Cir. Oct. 18, 2021). The complaint in that case only "ma[de] numerous conclusory allegations . . . [without] details as to how a violation of federal regulations" led to a manufacturing defect, a design defect, or an inadequate warning.

### i. Mr. Doucet's State Law Claims Are Expressly Preempted, But He May Amend to State Parallel Claims.

In the present motion, Defendants Abbott and St. Jude submit that this Court should take judicial notice that the DRG Stimulator at issue here is a Class III medical device that went through premarket approval before the FDA. R. Doc. 10. As such, it takes the position that § 360k(a)'s express preemption clause is applicable to all of Mr. Doucet's state law claims. More specifically, it argues that because Mr. Doucet's claims explicitly relate to safety and effectiveness and would require the device to use a different design, different warnings, or a different manufacturing process than the ones the FDA required through the PMA process, they would impose "different or additional" state law requirements and thus are expressly preempted. In opposition, Mr. Doucet asserts that "the LPLA duty is parallel to the duty imposed by federal PMA requirements, and thus, the DRG System's marketing and manufacturing implicate relevant laws that are federal in nature." Alternatively, Mr. Doucet requests leave to amend in the event that he has not sufficiently pled "parallel claims."

After considering the applicable case law, the Court reaches the inescapable conclusion that Mr. Doucet's state law claims are expressly preempted by § 360k(a) for the following reasons. Preliminarily, the Court notes that under a 12(b)(6) analysis, it is typically bound to the allegations made in a plaintiff's complaint on a motion to dismiss. This is troublesome for purposes of a preemption analysis because Mr. Doucet notably does not state that the DRG Stimulator is a Class III medical device subject to the MDA anywhere in his petition. Federal Rule of Evidence 201,

13

however, permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either: "(1) [] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Davis v. Toyota Motor Sales*, No. 14-683, 2015 WL 3456656, at *7 (M.D. La. May 29, 2015). Applying that rule to the present case, the Court will take judicial notice of the fact that the DRG Stimulator was approved by the FDA vis-à-vis the PMA process and received Class III status. The FDA documentation provided by Abbott and St. Jude in support bears sufficient indicia of reliability, such that its consideration at this stage in the proceedings is fair as to all the parties. Indeed, other courts routinely take judicial notice of PMA approval letters for Class III medical devices when deciding preemption issues at the motion to dismiss stage. *See, e.g., Funk*, 631 F.3d at 782-83 (finding that the district court took appropriate judicial notice of a PMA approval letter); *Gavin v. Medtronic, Inc.*, No. 12-0851, 2013 WL 3791612, at *2-3, *35-37 (E.D. La. July 19, 2013) (taking judicial notice of Class III medical device's FDA approval documents); *Rollins v. St. Jude Medical,* 583 F.Supp.2d 790, 805 (WD. La. 2008) (stating that a court "may take judicial notice of and consider the public records of the FDA ... without transforming a [motion to dismiss] into a motion for summary judgment.").

With no dispute then that the DRG Stimulator at issue here is a Class III medical device, whether preemption applies pursuant § 360k(a) of the MDA becomes a straightforward inquiry. Given Class III medical devices automatically satisfy the first prong of the *Riegel* test, the pivotal question is to what extent Mr. Doucet's state law claims create requirements "different from, or in addition to" the relevant FDA requirements. On similar facts to those presently before the Court in this case, the Fifth Circuit and other courts have consistently held that generically-pled LPLA and other redhibition claims premised upon substantive Louisiana law alone do not pass muster

14

under the *Riegel* test and thus are expressly preempted under § 360k(a) because they impose "requirement[s]" that related to the "safety and effectiveness" of a device that has already been approved by the FDA. *Rodriguez v. Am. Med. Sys., Inc.*, 597 F. App'x 226, 229 (5th Cir. 2014) (affirming district court's dismissal of complaint involving Class III medical device on preemption grounds); *Greene v. Nevro Corp.*, No. 23-CV-1648-JWD-RLB, 2025 WL 369682, at *7 (M.D. La. Jan. 31, 2025) (dismissing plaintiff's LPLA claims involving a spinal stimulator on preemption grounds); *Parra v. Coloplast Corp.*, No. CV 16-14696, 2017 WL 24794, at *4 (E.D. La. Jan. 3, 2017) (dismissing plaintiff's LPLA claims on preemption). *Reddick v. Medtronic, Inc.*, 2022 WL 715494, at *3 (affirming dismissal of LPLA claims because "all four claims impose requirements that relate to the safety and effectiveness of the device"); *Gavin*, 2013 WL 3791612, at *15 (dismissing plaintiff's state law inadequate warning, strict liability and negligence, redhibition, and warranty claims as preempted). Accordingly, the Court finds that it is well-settled law the MDA expressly preempts Mr. Doucet's claims, making them ripe for dismissal.[1]

But as the Court noted previously, the Fifth Circuit has opened the door to "parallel" claims—state law claims for damages "premised on a violation of FDA regulations." *See, e.g., Rodriguez*, 597 F. App'x at 228 ("Section 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements."); *Gomez,* 442 F.3d at 932 ("[A] lawsuit that simply parallels or enforces the federal regulatory requirements without 'threatening' or interfering with them is not preempted."). The problem here though is that Mr. Doucet's state law

---

[1] Alternatively, Abbott and St. Jude contend that Mr. Doucet's state law claims are *impliedly* preempted by the MDA. The basis of their argument is that in enacting the FDCA, Congress declined to create a private cause of action and required that any action to enforce the FDCA "shall be by and in the name of the United States," thus mandating that the FDCA and its implementing regulations be "enforced exclusively by the Federal Government. 21 U.S.C. § 337(a); *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352 (2001). However, the Court need not reach this issue because the express preemption provision under § 360k(a) plainly applies to the present facts as clarified by the aforementioned case law.

15

claims cannot be considered "parallel" as pled because he does not explicitly allege any violations of FDA regulations. Instead, his petition merely states generic allegations that the DRG Stimulator is defective without mention of the FDA or any specific requirements applicable to device that were imposed per the PMA process.

Rather than dismissing this case outright, however, the Court will give Mr. Doucet an opportunity to amend his petition in order to properly plead "parallel" claims. This outcome comports with this Court's prior decisions under similar facts involving preemption under the MDA. *Cenac v. Hubbell*, No. 09-3686, 2010 WL 4174573, at *3 (E.D. La. Oct. 21, 2010) (granting plaintiff two opportunities to amend and clarify her parallel claim); *Bush v. Thoratec Corp.*, 837 F. Supp. 2d 603, 609 (2011) (granting plaintiff leave to amend the complaint to attempt to "thread the needle" and state a cognizable parallel claim). For example, in *Chiasson v. Medtronic Inc*, the plaintiffs sued a manufacturer of a Class III medical device and brought three causes of action under the LPLA and a redhibition claim, which were all clearly preempted by the MDA. No. CV 16-3552, 2016 WL 4191837, at *4 (E.D. La. Aug. 9, 2016). But the court ultimately decided not to dismiss their claims and instead held:

> Because of the complex nature of this area of law and in the interest of justice, this Court has given plaintiffs in similar cases an opportunity to amend their complaints to clarify the parallel claim, specifically to plead a violation of state law, a parallel violation of a federal regulation, and the connection between that violation and the Plaintiff's injury.

*Id.* With this case law in mind, the Court in this instance will not depart from its prior reasoning and gives Mr. Doucet a chance to plead claims that can survive preemption. Mr. Doucet must be sure to plead his parallel claims with specificity—particularly the federal regulation that he alleges

16

Abbott and St. Jude breached; the parallel state claim; and its causal nexus to his injuries. *Id.* Should he fail to do so, Defendants may re-raise their motion to dismiss on preemption grounds.[2]

### b. The Court Will Not Dismiss Mr. Doucet's LPLA Claims on the Basis of Prescription at This Stage in the Proceedings.

Lastly, Abbott and St. Jude argue in the alternative that Mr. Doucet's LPLA claims should be dismissed on the basis of prescription. A federal court sitting in diversity must apply state law to issues of prescription. *Calhoun v. Ford*, 625 F.2d 576, 577 (5th Cir. 1980); *see also Mullen v. Sears, Roebuck, & Co.*, 887 F.2d 615 (5th Cir. 1989) (holding that Louisiana Civil Code articles regarding prescription apply in a removed diversity case). It is undisputed that Mr. Doucet's four products liability claims are governed by the Louisiana Products Liability Act. Delictual actions, such as those found in the LPLA, are subject to a prescriptive period of one year under Article 3492 of the Louisiana Civil Code. "[The prescription of delictual actions] commences to run from the day injury or damage is sustained." La. Civ. Code Ann. art. 3492 (2016). In Louisiana, damages are considered sustained "only when [the damage] has manifested itself with sufficient certainty to support accrual of a cause of action." *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La. 1993) (citing *McCray v. New England Ins. Co.*, 579, So.2d 1156 (La. App. 2 Cir. 1991)).

Here, Abbott and St. Jude contend that Mr. Doucet's LPLA claims arose in October of 2023 when he began experiencing irritation at the DRG Stimulator implant site. Mr. Doucet would thus have had until October 2024 to file his claims under the applicable one-year prescriptive period. His state court petition, however, was filed on January 13, 2025. In opposition, Mr. Doucet argues that prescription began to run on January 16, 2024 when Abbott informed him that the DRG Stimulator had been recalled, which would make his January 13, 2025 filing timely.

---

[2] Because Abbott and St. Jude's arguments based on the exclusivity of LPLA claims and an alleged failure to satisfy federal pleading standards are necessarily related to the preemption question, the Court will reserve any ruling on these issues until Mr. Doucet properly pleads a cognizable parallel claim.

17

Considering the applicable standard under a 12(b)(6) motion, the Court is required to construe all factual allegations contained in the petition and draw all reasonable inferences in the light most favorable to Mr. Doucet. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). As such, the Court must presume at this time that Mr. Doucet's LPLA claims arose on January 16, 2024—the date he was informed of the recall as alleged. To be clear, Mr. Doucet's claims may very indeed well be prescribed, but the facts presented on the face of the petition are sufficient to entitle the parties to discovery. Mr. Doucet notably had several post-operative discussions with his doctor about the DRG Stimulator leading up to the purported complications. Without discovering the content of these interactions, the Court finds that Abbott and St. Jude cannot present sufficient evidence to foreclose Mr. Doucet's claims as a matter of law. *Chiasson*, 2016 WL 4191837, at *6 (denying defendant's prescription argument on a 12(b)(6) because "the accrual of a cause of action and the reasonableness of delay in filing suit often hinge on the testimony of the plaintiff and his or her doctor); *see also Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F. Supp. 2d 835 (M.D. La. 2006). However, after the parties have had an opportunity to discover such matters, Abbott and St. Jude may re-raise their prescription argument.

### IV. CONCLUSION

For the foregoing reasons;

**IT IS HEREBY ORDERED** that Abbott's Motion to Dismiss for Lack of Personal Jurisdiction, R. Doc. 11, is **DENIED**.

**IT IS FURTHER ORDERED** that Abbott and St. Jude's Motion to Dismiss for Failure to State a Claim, R. Doc. 9, is **DENIED** without prejudice. This Court will grant Mr. Doucet leave to amend his petition as explained above. He will have 30 days from the issuance of this Order to file his amended complaint. Failure to do so will result in the dismissal of his case.

New Orleans, Louisiana on this 29th day of May, 2025.

*Eldon E. Fallon*